We'll hear the next case, United States v. Torriero. Hi. Good morning, Your Honors. May it please the Court, my name is Daniel Nooter. I represent the defendant appellant, Donald Torriero. Mr. Torriero was deprived below of even the most rudimentary notions of due process afforded indigent defendants, from having the right to have effective, unconflicted counsel appointed to represent him, to the right to have necessary expert legal services approved when a timely application is made, to even basics like being served with process or having hearings held on the record or being able to appear at these hearings when crucial determinations, such as the status of his counsel, are being determined. Is the timeline wrong or after Mr. Torriero knew he was going to get Mr. Moynihan again, he waited a year to complain about it? Is that right? Yes and no, Your Honor. I would suggest what the timeline doesn't reflect in that is that almost nothing happened in the case for a year until the government filed on February 29, 2016, its actual factual basis. And so pretty much all the legal work in the case occurred or should have occurred, had Moynihan done his duty, between March and May of 2016. And in May of 2016, both Moynihan individually requests an ex parte hearing to address counsel issues and Mr. Torriero himself addresses the court seeking a new counsel to be appointed. To follow up on Judge Rustani, though, he was reappointed April 14, 2015 by the district court. Yes. And the final text order is May 26, 2016. That's over a year later. During that time, did he ever say, hey, wait a second, this lawyer was removed on my direct appeal of my criminal conviction because he talked me into my guilty plea. I should never be appointed, have Moynihan reappointed in that one year. He never raised that with the district court, did he? Well, Your Honor, I think a key point to note is that Mr. Torriero was never in front of Judge Hurd in the entire ñ had he, for example, been ñ Certainly there was no notice at the very beginning of this because he's in the federal facility. But at some point, once Moynihan gets reappointed, there's back and forth between Torriero and Moynihan. Right? There's discussion. What does the record say about the back and forth? Is there back and forth and when? There's very little that's actually in the record. And some of this might have to be, you know, in the district court in a separate 2255. But what we do know from the record is that sometime in late 2015, Mr. Torriero was released from federal custody. But, again, at that time, other than negotiations, which ñ What does the record say about when Moynihan contacted Torriero for the first time? Is there anything that ñ There isn't any. I mean, I have knowledge from speaking with my client, but that's not in the record of when he believes the first contact occurred. Did Moynihan at any point say when he sent documents to Torriero? No. There's no record of him sending documents. You know, the government never themselves sent documents, nor did the court send documents. What the government did tell the court in requesting the April 14th hearing is that the ñ you know, is that the government hasn't even been able to ascertain, you know ñ Well, it's clear that in April of 2015 things were very unclear. And we're just trying to get a handle on when, within the next year and a month, Mr. Torriero was on notice that he was now being represented again by Mr. Moynihan. That's a fair question, Judge Tinn. I think we can definitely say that at least as of maybe August or September of 2015, from the government status letter, the government acknowledges that Mr. Torriero has been in contact and is attempting to reach a settlement. Respectfully, Your Honor, I want to address the expert witness issue because the law, I think, cannot be more clear that this court requires ñ it's the Smith case ñ that when a reasonable attorney would engage expert services for a client with the financial wherewithal to pay for them, the court is required under the Criminal Justice Act to approve such expert services. And here, and in fact in the direct ñ The court denied the request, principally because it felt it was untimely? Whereas the ñ whereas the docket makes absolutely clear that it was timely. The court ñ and it's the court simply, you know, endorsing an order that was written by the government. The government didn't know that the application was timely made because it was an ex parte application. So because the government doesn't know about it, the government writes this proposed order that says he never made ñ he never made this application. Whereas if you look directly on the docket, any ñ the district court would have had to do no more than look to the docket to see that the application was timely made, you know, more than ñ or about a month before, you know, when the court's scheduling said. It was done on April 20th, you know, well prior to the May 10th deadline that the court had set. And it's indisputable, you know, from the record. I think it's page 30 of the joint appendix has the docket entry. Actually, I didn't think that it was all that technical. So couldn't Mr. Terrio's counsel address the matters if they were ñ if they were challenged? I mean, it's mostly about APA spent this. And then the affidavit says, well, they spent it for this thing. I mean, it doesn't sound very technical to me. I think there are several very technical matters. First, I just want to say at the outset, Mr. Moynihan himself represented that he did not feel that he had the technical ken to deal with that. At the very least, I feel that the court should have looked into that because if Moynihan is indeed representing that he does not have the technical expertise and, in fact, never did file anything, then I think that should be ñ Whatís technical? Okay, there are several. First, there was a whole issue of the question of whether what the government was claiming was in fact based on the actual offensive conviction, which is all that restitution is permitted for, or was at least partially caused by intervening third-party negligence by the, you know, by the contractors that the government, you know, had assumed. Secondly, there was a whole issue regarding the relationship between the fraudulent conduct because, again, my client was only actually convicted of fraud, as this Court previously found when this was a ñ Causation issues? These causation issues? There were causation issues and there were questions about, you know, whether things were done that were more than necessary, and there were questions about what was attributable specifically to Mr. Torriero and the fraud that he was engaged in as opposed to the dumping activities of his four co-defendants. So those were all issues that an expert, Mr. Moynihan himself, told the Court that he, you know, would have needed assistance to address. Iíve got another question, unrelated. I thought that there was a time limit on amending a judgment to add restitution, what, 90 days? I canít remember now. But there seemed to have been a lag of a year and a half. So what is the explanation for that? Yeah. Well, the explanation, Your Honor, is that Mr. Moynihan and what he did do when he was ordered to respond in April 2015 is specifically raise this issue. You know, itís in the joint appendix on the timeliness, and absolutely raised that issue, and the district court completely at no point in just ñ That doesnít seem to be a basis of the appeal, and Iím just wondering why the timeliness issue wasnít pursued. I might be missing something. Well, itís ñ I would suggest, Your Honor, that there were a number of issues that ñ it suggested to the fact that the district court ñ I would conclude it in that sort of third catch-all substantive unreasonableness in that none of the five different issues that Moynihan raised. And, you know, I had, you know, I didnít want the brief to be like 70 pages or 100 pages or to go into all those five different things, but there were a number of issues raised, and none of them, the timeliness, but several others as well, were ever addressed in ñ by the district court. And ñ Thank you. Weíll hear from the government. Good morning, Your Honor. May it please the Court. My name is Tecla Hanson-Young, and I represent the United States. Mr. Torriero seeks to reduce the amount of restitution he was ordered to pay to EPA for the costs that it incurred in cleaning up asbestos contamination. What about the timeliness issue? I didnít see anything written on it. But I thought that when we enter a judgment and thereís a question about restitution, I think it was 90 days to amend the judgment. I believe youíre correct, Your Honor. Right. So what ñ how could it be done here two years later? What happened here ñ and the Mandatory Victims Restitution Act provides for an untimely request to amend the restitution amount, or a later filed request to amend a restitution amount when there is good cause. And here, when the district court originally entered the original judgment, ordering restitution in the first instance, the United States had asked for EPA to be reimbursed for costs that it anticipated it would incur, but had not yet incurred. The district court said ñ But thereís good cause here? Or did the district court rule on good cause? The district court ruled on good cause here and said EPA had not yet incurred the costs as of the original sentencing date, and therefore, EPA could not have at-filed its full request for restitution at that time, and found that EPA had timely filed its request to amend the restitution amount as soon as it had finished the cleanup. On that theory, there would be an indefinite amount of time to amend, to add cleanup costs or any kind of costs to restitution if they are incurred later on? I mean, itís just the mere fact that they are incurred later on, is that enough for good cause? I would say that it goes ñ well, I would say that it is one component of that, and here, the district court contemplated that it would be amending the restitution order to account for later incurred costs, and as soon as EPA finished cleaning up the site and had ascertained the costs that it had incurred, it timely filed its request to modify the restitution award or order. The district court judge ruled on the timeliness of the matter, and Mr. Torriero has not presented that issue on appeal. If the court would like additional briefing on that matter, Iím happy to submit something. On the expert matter, which is what I find more confusing in this case, it seems like he wasnít late in requesting an expert. So the question is, did he need an expert? The answer is no, and the district court denied his request for an expert both on the merits, because the court found that he had not demonstrated a reasonable necessity for an expert, and The district court had set a schedule contemplating experts, right? The district court had set a schedule contemplating experts if the defendant made such a request, which the defendant did. But regardless of whether or not the district court had contemplated possibly appointing an expert, the defendant would have still had to show that an expert was reasonably necessary for his defense. And if you look at his ex parte request, which is in the sealed appendix, all Mr. Moynihan stated was that he needed assistance assessing the strengths and the weaknesses of the governmentís case. The reasons that Mr. Nooter presented just now were nowhere presented in that original motion, and the government submits that a request for assistance to assess the strengths and weaknesses of a case amounts to a fishing expedition. In other words, what Mr. Moynihan needed to do if he believed an expert was reasonably necessary would be to identify a particular defense that he had already raised, for example, in his substantive opposition that he filed in April 2015, and explain that he needed an expert to bolster one of the defenses that he had raised previously, or to develop a new defense that would be pivotal in defending against the restitution award. He did not do that here, and without having done that, he canít now say that he was prejudiced on appeal or demonstrate that an expert was reasonably necessary. I would also submit that, setting asideó Do we know that the district court would have reached the same decision if it had understood that the request was timely? Yes, we do, because the district court found that Mr. Torriero had not shown an expert was reasonably necessary, and that language is at the bottom of page 12 and at the top of page 13 of the district courtís order. I would also submit that, irrespective of whether the court erred in portions of its ruling, it doesnít matter, because Mr. Torriero has not shown that the outcome of the restitution proceedings would be any different. The Mandatory Victims Restitution Actó Under our case law, you know, Curcio, and the cases that follow, a district judge has an obligation to initiate an inquiry when it has been apprised of even the possibility of a conflict of interest. The governmentís letter surely apprised of the possibility of a conflict of interest. Would you agree with that? I would agree with that. Moynihan was actually relieved on appeal because of a potential conflict of interest. Do we know if the district court initiated any kind of inquiry on the conflict? Well, the district court did have a hearing as to who was representing which defendant in April 2016ó Which was not transcribed. Which was not transcribed, butó How do we know what was said at that hearing? I would submit that it doesnít matter for this courtís resolution of the claim, and here is why. Mr. Torriero stated prior to his first appeal that he planned to allege that Mr. Moynihan had coerced him into pleading guilty. He was appointed new counsel by this court on his first appeal. His new lawyer did not raise that claim in his direct appeal, challenged only the term of his imprisonment. And Mr. Torriero was also given an opportunity to file aó You mean there wasnít a conflict. He was given an opportunity to file a supplemental pro se brief alleging that he had been coerced into pleading guilty. He did not do so. When Mr.ó Do you agree that when it came back to the district court, there was the possibility of a conflict of interest? No, because the onlyó Not even a possibility. No, because the only conflictó The government in its letter didnít suggest the possibility of a conflict. No, because the conflict that was identified was that Mr. Moynihan had coerced Mr. Torriero into pleading guilty, which has noó The only way that that could have putócreated a potential conflict would have been if Mr. Moynihan had had the obligation to inquire about whether indeed there was a conflict, a potential conflict, or whether there was a waiver. Not where Mr. Moynihan is not in the position of having to argue that he himself coerced a guilty plea. I mean, how do we know that Mr. Moynihan even consulted with the client before that telephone conference? The record shows thatóitís not clear that he consulted with him before, but he did consult with himó Did he even talk intelligently about whether there was a conflict? The record shows that he was in consultation with his client immediately after that April 2015 conference, and we know that because he had requested the district court to produce Mr. Torriero for the scheduled April 2015 hearing on restitution. Two weeks after, that hearing was adjourned to July so that Mr. Torriero could be produced. Mr. Moynihan then submitted a letter stating that he had been in touch with Mr. Torriero who did not want to be produced for the hearing. So as early as April, we know that Mr. Moynihan was in touch with Mr. Torriero. Thereís also emails in the appendices between Mr. Torriero and his lawyer, Mr. Moynihan, that discuss the preparation of a defense and that indicate that Mr. Moynihan was expecting Mr. Torriero to get back to him with information that Mr. Torriero failed to provide. So the record is full of instances of communication between Mr. Torriero and Mr. Moynihan, and we would submit that the fact that Mr. Moynihan was never placed in a position of having to allege he coerced a guilty plea means that there was no such conflict and no need to even inquire into the possibility of conflict. If the court has no further questions, I see Iím out of time. You have another minute. Oh, my apologies. Let me ask, you know, the district court, after the first Scorpius report, I think, said to the government, ìI need more documentation.î And thatís when you came up with the affidavit from an expert. Thatís correct. Well, the affidavit is not from an expert per se. The affidavit actually was a fact witness, EPAís on-scene manager, who was responsible for documenting the costs that EPA had incurred. So the affidavit explained the costs that EPA had incurred and how they were attributed to Mr. Torrieroís conduct. What I would like to emphasize to this court is that the Mandatory Victims Restitution Act simply requires the government to prove that the victim incurred the costs as a result of the defendantís conduct. And the burden of proof is preponderance of the evidence. Here the government has more than met that burden of proof with its reports, which detail the costs that EPA incurred, the supporting documents, and also the affidavit explaining the costs. And Mr. Torriero in his briefing has nowhere showed that the outcome would be different even if he were appointed an expert or if he had a different lawyer. And now I am out of time. We would ask that this court affirm the judgment of the district court. Thank you. Thank you. We are at the rebuttal. May it please the Court again. With respect to the Lopez, the affidavit, who wrote the affidavit for the government, was, notwithstanding what the government puts forth, was an expert. Lopez was an environmental engineer with 20 years of experience with the EPA and used that expertise as the basis for presenting this detailed, factualó In requesting an expert, did these problems that you pointed out, was that part of the request that we need an expert because Mr. Torrieroís conduct didnít cause these costs, et cetera, et cetera? Was that in the request? No. What Mr. Moynihan stated was that he just didnít understand the documents anyway, that he was not in a position to feelóhe said, ìI lack the specialized knowledge necessary to analyze the costs associated with the Superfund cleanup.î I want to address the law for a moment, the case of Durant, because it makes it clear that this test needs to be interpreted for the basis of the fairness of the adversarial process, broadly in favor of a defendant seeking an expert in order, ìto redress the imbalance in the criminal process,î between the fact that an indigent defendant has no resources and the government has the resources of people like Lopez, an environmental engineer with 20 yearsí experience, that they can trot out with 5,400 pages of technical support. To just quickly pivot to the counsel issueó Can I ask you about the counsel issue? Sure. Is the letter of March 27, 2015, does it advise the district judge that the Second Circuit relieved Moynihan from representing him in the direct appeal? Does it say that there was a conflict alleged? Yes. In fact, theó Let me just finish. In the direct appeal, though, there was a letter to the district court saying, ìWe think you need to have a cursio hearing if youíre going to continue to have Moynihan represent him.î Do we have any record of what happened at that conference, other than that text entry in the docket sheet that shows, ìCourt reappointed Moynihan.î Did anybody raise that, ìLook, we had this problem because we asked for a cursio hearing before. We didnít need it because the Second Circuit appointed a new lawyer.î But you should be aware of this, Your Honor, that my office has said there should be a cursio hearing before Moynihan proceeds with his representation. Do we have any record of what happened with all this? No, Your Honor. Thatís precisely the problem. My client was neverówas not even allowed to participate in this hearing. He was not present at the hearing. He doesnít know what happened. The hearing was held off the record. So you all donít know what happened. I donít know what happened. I wasnít his trial counsel. I wasnít at the hearing either. None of usónone of us being, you know, me or Mr. Torriero or any of the people here in this Court know what happened at that hearing. Do you have additional questions for me? No. Okay. Then I respectfully request that this Court vacate the judgment and remand to a different judge to have new counsel appointed and expert appointed. Thank you. Thank you. We will reserve decision.